# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and the States of CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MASSACHUSETTS, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VIRGINIA AND WASHINGTON; *ex rel.* ROBERTA POWELL , | : : : : : : : : : : : : : | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>CIVIL ACTION NO. |
| Plaintiffs, | : : | |
| vs. | : | |
| MEDTRONIC, INC., MEDTRONIC USA, INC. MEDTRONIC MINIMED, INC. and MINIMED DISTRIBUTION CORP., | : : : : : | COMPLAINT<br><br>JURY TRIAL DEMANDED |
| Defendant. | : | **DO NOT PLACE IN PRESS BOX** |

_____

On behalf of the United States of America pursuant to the United States False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"), and on behalf of the States of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia and Washington (collectively, "*qui tam* states") pursuant to the *qui tam* states' respective False Claims Acts, Plaintiff-Relator Roberta Powell ("Relator") files this *qui tam* Complaint for treble damages and civil money penalties against defendants Medtronic, Inc., Medtronic USA, Inc., Medtronic MiniMed, Inc.,

and MiniMed Distribution Corp. These claims arise out of the defendant's illegal marketing and promotion of the iPro2 Continuous Glucose Monitoring system which has resulted in the submission of false and fraudulent claims for payment to the United States Government and *qui tam* states as set forth below. In support of these claims, Relator alleges as follows:

## I. INTRODUCTION

1. In this action, Relator alleges that the defendants have, at all relevant times continuing until the present day, illegally marketed and promoted its iPro2 Professional Continuous Glucose Monitoring system, a class III medical device approved as a continuous glucose monitoring ("CGM") system for diabetics, in two primary ways:

First, Medtronic instructs health care providers to re-use one of the system's components on multiple patients notwithstanding the fact that the FDA specifically approved the component as a single patient use device. This misconduct is material to the United States and *qui tam* state governments' payment decisions because it causes government health care programs to overcompensate physicians for their use of the system and it exposes government health care program beneficiaries to a risk of harm by causing re-use of potentially contaminated devices.

Second, Medtronic markets and promotes the system to health care providers for medically unnecessary use based on the system's reimbursement potential. Medtronic markets the system to podiatrists and primary care physicians who have no use for the CGM data and, absent any training by Medtronic, often do not even understand the CGM data reports. Medtronic promotes the system to these physicians – and these physicians agree to use it – primarily based on the reimbursement potential. This misconduct is

material to the United States and *qui tam* state governments' payment decisions because it causes government health care programs to pay for medically unnecessary services.

## II. THE PARTIES

### A. Plaintiff-Relator

2.  Plaintiff-Relator Roberta Powell, MPA, BSN, CDE, is an individual citizen of the State of Rhode Island.

3.  Relator has extensive experience as a diabetes educator and clinician.

4.  In 2017, Relator underwent the defendants' training program to become a certified iPro2 Professional CGM system trainer, and she acquired most of the information that is the basis for her allegations in this case during that training.

### B. Defendants

5.  Medtronic, Inc. is a Minnesota corporation with a principal place of business at 710 Medtronic Parkway, Minneapolis, MN 55432.

6.  Medtronic USA, Inc. is a Minnesota corporation with a principal place of business at 710 Medtronic Parkway, Minneapolis, MN 55432.

7.  Medtronic MiniMed, Inc. is a Delaware corporation with a principal place of business at 18000 Devonshire Street, Northridge, CA 91325, and a wholly owned subsidiary of Medtronic, Inc.

8.  MiniMed Distribution Corp. is a Delaware corporation with a principal place of business at 18000 Devonshire Street, Northridge, CA 91325, and a wholly owned subsidiary of Medtronic MiniMed, Inc.

9.  Defendants Medtronic, Inc., Medtronic USA, Inc., Medtronic MiniMed, Inc., and MiniMed Distribution Corp. (collectively referred throughout as "Medtronic") supply diabetes

medical devices, including those at issue in this case, and employ the individuals responsible for the illegal conduct described herein.

10.     Medtronic acts by and through its actual and/or ostensible agents, employees, representatives, and/or servants and is liable for their conduct under theories of vicarious liability and/or respondeat superior.

## III.    JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction over this case pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331 and 1345.

12.     Venue is proper in this judicial district pursuant to 31 U.S.C. § 3732(a) and/or 28 U.S.C. § 1391(b).

13.     This Court has personal jurisdiction over the defendants under 31 U.S.C. § 3732(a) because the defendants transact business and submitted false or fraudulent claims directly or indirectly to the federal government in this judicial district.

14.     Relator has direct and independent knowledge on which the allegations are based, is an original source of this information to the United States and the *qui tam* states, and she has voluntarily provided the information to the United States before filing this action based on the information.

15.      This suit is not based on prior public disclosures of allegations or transactions in a criminal, civil or administrative hearing, lawsuit, investigation, audit or report, or from the news media.  To the extent that there has been any public disclosure unknown to Relator, he is an original source under 31 U.S.C. § 3730(e)(4).

## IV.   AFFECTED FEDERAL HEALTH CARE PROGRAMS

### A.   Medicare

16.     Medicare is a federal health insurance system for people 65 and older and for people under 65 with certain disabilities.   Medicare Part A provides hospital insurance for eligible individuals. See 42 U.S.C. §§1395c-1395i.  Medicare Part B is a voluntary subscription program of supplementary medical insurance covering outpatient items and services.   See 42 U.S.C. § 1395k(a)(2)(B).

17.     The threshold for Medicare Part B coverage is set forth in 42 U.S.C. § 1395y(a)(1)(A), which states that "[n]o payment may be made… for any expenses incurred for items or services which… are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member."

### B.   Medicaid

18.     Medicaid programs in accordance with Federal regulations.   State Medicaid agencies conduct their programs according to a Medicaid State plan approved by the Center for Medicare & Medicaid Services ("CMS").   Those state agencies pay providers for medical care and services provided to eligible Medicaid recipients.   Providers that wish to participate in the Medicaid program must agree to comply with certain requirements specified in a provider agreement.

19.     While Medicaid programs are administered by the States, they are jointly financed by the Federal and State governments.   The Federal Government pays its share of medical assistance expenditures to the State on a quarterly basis according to statements of expenditures submitted by the State and a formula used to calculate how much of the total reported expenditures the Federal Government will reimburse the State, as described in sections 1903 [42

U.S.C. § 1396b] and 1905(b) [42 U.S.C. § 1396d(b)] of the Medicaid Act. The amount of the federal share of medical assistance expenditures is called Federal Financial Participation ("FFP"). The State pays its share of medical assistance expenditures from state and local government funds in accordance with the requirements of section 1902(a)(2) [42 U.S.C. § 1396a(a)(2)] of the Medicaid Act. Different levels of federal funding are provided to different States, depending on need. The precise level of federal funding for each State calculated by the Federal Government each federal fiscal year.

### C.    Other Federal Health Care Programs

20.    The federal government administers other health care programs including, but not limited to, TRICARE, CHAMPVA, and the Federal Employee Health Benefit Program.

21.    TRICARE, administered by the United States Department of Defense, is a health care program for individuals and dependents affiliated with the armed forces.

22.    CHAMPVA, administered by the United States Department of Veterans Affairs, is a health care program for the families of veterans with 100 percent service-connected disability.

23.    The Federal Employee Health Benefit Program, administered by the United States Office of Personnel Management, provides health insurance for federal employees, retirees, and survivors.

24.    Medicare, Medicaid and the other federal health care programs listed above will collectively be referred to herein as "government health care programs."

## V. THE UNITED STATES FALSE CLAIMS ACT ("FCA")

25. The United States False Claims Act prohibits, *inter alia*, the following:

knowingly presenting (or causing to be presented) to the federal government a false or fraudulent claim for payment or approval; and

knowingly making or using (or causing to be made or used) a false record or statement material to a false or fraudulent claim.

U.S.C. §§ 3729(a)(1)(A)-(B).

## VI. DEFENDANTS' CONDUCT IN VIOLATION OF THE FCA

### A. iPro2 Professional Continuous Glucose Monitoring System

26. The purpose of Continuous Glucose Monitoring (or "CGM") is to identify glucose level fluctuations and trends that might go undetected with standard blood sugar monitoring such as intermittent finger stick tests. CGMs are class III medical devices that require FDA premarket approval pursuant to the federal Food, Drug and Cosmetic Act, 21 U.S.C. § 351 *et seq.* ("FDCA").

27. Medtronic's iPro2 Professional Continuous Glucose Monitoring System uses a sensor that a clinician (often a medical assistant or LPN) inserts subcutaneously into the patient's abdomen. The sensor is connected to an electronic transmitter device that records interstitial glucose readings continuously during the period that the patient wears the device, which is at least 72 hours.

28. Upon removal, the transmitter data is downloaded to a computer and a report is generated. A physician then reviews and interprets the report looking for glucose level patterns.

29. Medicare and other third-party payers reimburse for both a technical fee and a professional fee when the iPro2 system is used. The technical component is billed under CPT code 95250 and the professional component for the data interpretation is billed under CPT code 95251.

30. Medicare has not established a national coverage policy for professional CGM, but CPT codes 95250 and 95251 are currently payable in all 50 states; the average Medicare physician fee schedule reimbursement rates for 95250 and 95251 are $159 and $44, respectively.

31. Medtronic provides reimbursement information searchable by zip code at this link, which is designed to allow a health care provider to create a "reimbursement model":

https://professional.medtronicdiabetes.com/professional-cgm-reimbursement-tool

32. The iPro2 Professional CGM system includes a component device called an Enlite Serter. The Serter enables the clinician to insert the sensor into the patient by depressing and releasing a button. The Serter is used in conjunction with the sensor/needle used to inject the sensor subcutaneously into the patient. The needle is then discarded.

33. The retail price of the Enlite Serter is approximately $30 to $50; the sensor package is sold separately and costs approximately $60. The transmitter costs approximately $900 and is designed for multi-patient use.

34. The FDA approved the Serter as a single-patient use device – it is not intended for multiple patient use. *See* https://www.accessdata.fda.gov/cdrh_docs/pdf12/P120010b.pdf.

35. Medtronic also sells a Personal iPro Continuous Glucose Monitoring system, which (as the name suggests) is designed for personal use. A patient may re-use the Serter on him or herself; maintenance instructions are provided for this purpose.

36. Where clinicians use the Serter as part of the Professional iPro2 CGM System, the FDA approved indications for use are clear that, for safety reasons, the Serter must be discarded after each patient use.

**B.** **Medtronic Illegally Instructs Clinicians to Re-Use the Serter on Multiple Patients**

37. During her training to become a certified iPro2 Professional CGM system trainer, Relator personally observed a Medtronic trainer instructing the medical staff of Medronic's physician customers to re-use the Serter on multiple patients.

38. One such occasion occurred at the office of health care provider B.P. on September 11, 2017.

39. The instructor was Carissa Burton, Medtronic Diabetes, NDT Sales Representative, New England Region.

40. At that training session, Ms. Burton told the office's clinical staff that the FDA had approved the Serter only for single-patient use but, in the next breath, said: "what I tell all my offices to do is to keep using the same one for about a month" because "it barely even touches the patient."

41. Ms. Burton went on to explain that, as long as the clinicians clean the bottom with an alcohol wipe between patients, they could continue re-using it for a month or two. She even told the office staff that she had one for eight months even though she uses it "a million times a day."

42. This illegal instruction was not an isolated occurrence. In addition to the fact that Ms. Burton told the office's clinical staff that this is "what I tell all of my offices," Relator avers:

- Ms. Powell has an extensive background in diabetes care and education and she was very familiar with the iPro2 Professional CGM system prior to becoming a trainer. To her knowledge, re-using the Serter on multiple patients has always been the common practice because Medtronic has never instructed otherwise.

- Medtronic's training and promotional materials misleadingly suggest that the Serter may be used on multiple patients. For example, Medtronic's 48-page iPro2 Continuous Glucose Monitoring Step-by-Step Training Guide does not instruct clinicians to discard the Serter after use and makes no mention of the FDA's approval of the Serter of a single-use device.

- Sensors and Serters are sold separately, with the former sold in boxes of five and the latter sold in a single individually wrapped box.

43. Medtronic's motive for instructing physician office staff to disregard the FDA approved instructions for use (and for concealing the single-use limitation in its instructional materials) is simple: the more money that physicians can make by using their CGM system, the more that physicians will use it.

44. Unwitting physicians are happy for their staff to follow Medtronic's instructions to re-use the Serter because that increases the physicians' profit for each use of the iPro2 system by $30-$50.

45. Medtronic is facing increasing competition in the market so Medtronic has additional incentive to make its system as inexpensive and simple to use as possible for physicians.

46. Medtronic's illegal promotion of its iPro2 Professional CGM system causes physicians to submit false claims for CPT codes 95250 and 92251 where the physicians' office staff has, at Medtronic's direction, re-used the Enlite Serter on government health care program beneficiaries.

47. Medtronic's misconduct is material to the government's payment decision in two respects: (1) Medtronic is causing physicians to be overcompensated for their use of CGM

monitoring thereby conferring an undue benefit on physicians and improperly incentivizing physicians to use the system; and (2) Medtronic's conduct is exposing patients to an obvious risk of patient harm by encouraging physicians to re-use potentially contaminated devices.

48.     By instructing physicians and their clinical staff to re-use the Serter in violation of the FDA approved instructions for use – and thereby reducing the physicians' costs in using the iPro2 system to less than fair market value -- Medtronic is knowingly offering or paying remuneration to physicians to use the iPro2 system for services that are paid by government health care programs in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b ("AKS").

**C.     Medtronic promotes the Ipro2 CGM System for medically unnecessary use**

49.     Medtronic promotes the iPro2 Professional CGM system to health care providers based on the reimbursement potential of using the system, even where CGM monitoring is medically unnecessary or provides no benefit to their patients.

50.     An estimated 30 million Americans have diabetes.  Five percent are Type I diabetics, who are, by definition, insulin dependent.  Type I diabetics are typically under the care of endocrinologists, highly trained specialists who manage their patients' insulin regimen. Endocrinologists generally have the knowledge and training necessary to understand the CGM data recorded by the iPro2 system and can make good use of that data in treating their Type I diabetic patients.

51.     The remaining 95% have Type II diabetes, which is commonly referred to as "adult onset diabetes."  Many Type II diabetics are treated by their primary care physicians (internal medicine and family practitioners) for their diabetes, and some Type II diabetics do not use insulin at all.

52.     In addition, podiatrists often see a high volume of Type II diabetic patients because regular foot checks are needed to prevent common foot complications of diabetes such as foot ulcers.  Podiatrists do not manage their patients' insulin regimens.  Podiatrists would rarely have need for CGM data, and, like many primary care physicians ("PCPs"), they may not even understand the data without significant education.

53.     Therefore, when marketing the iPro2 system to PCPs and podiatrists, Medtronic emphasizes the reimbursement potential of CGM.  On September 11, 2017, Ms. Burton told the health care provider's clinical staff "**any Medicare patients, put this on your Medicare patients because Medicare is going to cover it every single time**."

54.     Later that day, as they were leaving the office, Ms. Burton told Relator that, while it's a different story with endocrinologists, the appeal of iPro2 system to PCPs and podiatrists is the reimbursement.  As Ms. Burton put it, they are "businessmen" – they hear the reimbursement potential and "their ears perk up."

55.     Nevertheless, while Medtronic aggressively markets the iPro2 system to PCPs and podiatrists, however, the company provides little if any training in how to interpret and use the data.

56.     The end result of this misconduct is that, in many cases, the government is paying for CGM that is completely medically unnecessary and of no benefit whatsoever to any government health care plan beneficiary.

57.     Medtronic's illegal promotion of its iPro2 Professional CGM system causes physicians to submit false claims for CPT codes 95250 and 92251 where the services were neither medically necessary nor had any benefit to the patients because the physician did not understand, have any need for or use the CGM data.

12

58.     Medtronic's misconduct is material to the government's payment decision because the government would not pay for either technical or professional CGM services if the government knew that the services were not "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member."

## COUNT I

## VIOLATION OF THE FALSE CLAIMS ACT – 31 U.S.C. § 3729(a)(1)(A)

59.     Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

60.     Defendants knowingly presented, or caused to be presented, and continue to present or cause to be presented, false and fraudulent claims for payment or approval to the United States – *i.e.*, the foregoing false and fraudulent claims for payments from Medicare, Medicaid and other federal health care programs – in violation of 31 U.S.C. § 3729(a)(1)(A).

61.     Said false and fraudulent claims were presented with defendants' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

62.     The United States relied on these false and fraudulent claims, was ignorant of the truth regarding these claims, and would not have paid for these false and fraudulent claims had it known the falsity of said claims.

63.     As a direct and proximate result of the false and fraudulent claims made by defendants, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act in an amount to be determined at trial, plus civil penalties up to the maximum permitted by law for each such violation of the False Claims Act.

WHEREFORE, Relator requests that judgment be entered against defendants Medtronic, Inc., Medtronic USA, Inc., Medtronic MiniMed, Inc., and MiniMed Distribution Corp for treble the amount of the United States' damages to be determined at trial, and all allowable civil penalties, fees, interest and costs under the False Claims Act and for all other and further relief as the Court may deem just and equitable.

## COUNT II

### VIOLATION OF THE FALSE CLAIMS ACT – 31 U.S.C. § 3729(a)(1)(B)

64.    Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

65.    Defendants knowingly made, used or caused to be made or used, and continue to make, use and cause to be made or used, false records or false statements material to the foregoing false or fraudulent claims to get these false or fraudulent claims paid and approved by the United States, in violation of 31 U.S.C. § 3729(a)(1)(B).

66.    Defendants' knowingly false records or false statements were material, and upon information and belief continue to be material, to the false and fraudulent claims for payments it made and continues to make to the United States.

67.    The materially false records or false statements that defendants made or caused to be made are set forth above and include, but are not limited to false verbal statements and written training and instructional materials stating or implying that the Enlite Serter may be used on multiple patients and false certifications of medical necessity.

68.    These said false records or false statements were made, used or caused to be made or used, and continue to be made, used and caused to be made and used, with defendants' actual

knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

69.    As a direct and proximate result of these materially false records or false statements, and the related false or fraudulent claims made by defendants, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act in an amount to be determined at trial, plus civil penalties up to the maximum permitted by law for each such violation of the False Claims Act.

WHEREFORE, Relator requests that judgment be entered against defendants Medtronic, Inc., Medtronic USA, Inc., Medtronic MiniMed, Inc., and MiniMed Distribution Corp for treble the amount of the United States' damages to be determined at trial, and all allowable civil penalties, fees, interest and costs under the False Claims Act and for all other and further relief as the Court may deem just and equitable.

## COUNT III – CALIFORNIA FALSE CLAIMS ACT

70.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

71.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of California to recover treble damages and civil penalties under the California False Claims Act, Cal. Gov't. Code § 12650, *et seq.*

72.     Cal. Gov't Code § 12651(a) provides liability for any person who:

(1) knowingly presents, or causes to be presented, to an officer or employee of the state or of any political division thereof, a false claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false claim paid or approved by the state or by any political subdivision;

(3) conspires to defraud the state or any political subdivision by

getting a false claim allowed or paid by the state or by any political subdivision; and/or

(4) is a beneficiary of an inadvertent submission of a false claim to the state or a political subdivision, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim.

73.     In addition, the payment or receipt of bribes or kickbacks is prohibited under Cal.Bus. & Prof. Code § 650 and 650.1, and is also specifically prohibited in treatment of Medi-Cal patients pursuant to Cal. Welf. & Inst. Code §14107.2.

74.     Defendants violated Cal. Bus. & Prof. Code § 650 and 650.1 and Cal. Welf. & Inst. Code §14107.2 by engaging in the conduct alleged herein.

75.     Defendants furthermore violated Cal. Gov't Code § 12651(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of California by its deliberate and systematic violation of federal and state laws, including the FDCA, AKS, Cal. Bus. & Prof. Code § 650-650.1 and Cal. Welf. & Inst. Code § 14107.2 and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government healthcare programs.

76.     The State of California, by and through the California Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

77.     Compliance with applicable Medicare, Medi-Cal and the various other federal and state laws cited herein was an implied and, upon information and belief, also an express condition of payment of claims submitted to the State of California in connection with Defendants' conduct. Compliance with applicable California statutes and regulations was also an express condition of payment of claims submitted to the State of California.

78.     Had the State of California known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

79.     As a result of Defendants' violations of Cal. Gov't Code § 12651(a), the State of California has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

80.     Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Cal. Gov't Code § 12652(c) on behalf of herself and the State of California.

81.     This Court is requested to accept supplemental jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of California in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF CALIFORNIA and against Defendants:

(1)     Three times the amount of actual damages which the State of California has sustained as a result of Defendants' conduct;

(2)     A civil penalty of up to $10,000 for each false claim which Defendants presented or caused to be presented to the State of California;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)     The maximum amount allowed pursuant to Cal. Gov't Code §

12652 and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## <u>COUNT IV – COLORADO MEDICAID FALSE CLAIMS ACT</u>

82.     Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

83.     This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Colorado to recover treble damages and civil penalties under the Colorado Medicaid False Claims Act, C.R.S.A. § 25.5-4-304, *et seq*.

84.     Colorado's Medicaid False Claims Act, C.R.S.A. § 25.5-4-304, provides for liability for any person who:

a. Knowingly presents, or causes to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval;

b. Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim;

c. Has possession, custody, or control of property or money used, or to be used, by the state in connection with the "Colorado Medical Assistance Act" and knowingly delivers, or causes to be delivered, less than all of the money or property;

d. Authorizes the making or delivery of a document certifying receipt of property used, or to be used, by the state in connection with the "Colorado Medical Assistance Act" and, intending to defraud the state, makes or delivers the receipt without completely knowing that the information on the receipt is true;

e. Knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state in connection with the "Colorado Medical Assistance Act" who

18

lawfully may not sell or pledge the property;

    f.   Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state in connection with the "Colorado Medical Assistance Act," or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state in connection with the "Colorado Medical Assistance Act"; ... or

    g.   Conspires to commit a violation of paragraphs (a) to (f) of this subsection (1).

85.    In addition, C.R.S.A. § 25.5-4-414 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for furnishing any item or service for which payment may be made in whole or in part, under the Colorado Medicaid program.

86.    Defendants violated the Colorado Medicaid False Claims Act by engaging in the conduct alleged herein.

87.    Defendants further violated the Colorado Medicaid False Claims Act and knowingly caused numerous false claims to be made, used and presented to the State of Colorado by their deliberate and systematic violation of federal and state laws, including the FDCA, AKS and C.R.S.A. § 25.5-4-414, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government healthcare programs.

88.    The State of Colorado, by and through the Colorado Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

89.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express

condition of payment of claims submitted to the State of Colorado in connection with Defendants' conduct. Compliance with applicable Colorado statutes and regulations was also an express condition of payment of claims submitted to the State of Colorado.

90. Had the State of Colorado known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

91. As a result of Defendants' violations of the Colorado Medicaid False Claims Act, the State of Colorado has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

92. Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Colorado Medicaid False Claims Act on behalf of herself and the State of Colorado.

93. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Colorado, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF COLORADO and against Defendants:

(1) Three times the amount of actual damages which the State of Colorado has sustained as a result of Defendants' conduct;

(2) A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Colorado;

(3) Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)     The maximum amount allowed pursuant to Colorado Medicaid
        False Claims Act and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator
        incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT V – CONNECTICUT FALSE CLAIMS ACT

94.     Plaintiff-Relator realleges and incorporate by reference the prior paragraphs as though fully set forth herein.

95.     This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Connecticut to recover treble damages and civil penalties under the Connecticut False Claims Act, Conn. Gen. Stat. § 17b-301a, *et seq*.

96.     Conn. Gen. Stat. § 17b-301b imposes liability as follows:

a.  No person shall:

    i.   Knowingly present, or cause to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval under a medical assistance program administered by the Department of Social Services;

    ii.  Knowingly make, use or cause to be made or used, a false record or statement to secure the payment or approval by the state of a false or fraudulent claim under a medical assistance program administered by the Department of Social Services;

    iii. Conspire to defraud the state by securing the allowance or payment of a false or fraudulent claim under a medical assistance program administered by the

Department of Social Services;

    iv.    Having possession, custody or control of property or money used, or to be used, by the state relative to a medical assistance program administered by the Department of Social Services, and intending to defraud the state or willfully to conceal the property, deliver or cause to be delivered less property than the amount for which the person receives a certificate or receipt;

    v.    Being authorized to make or deliver a document certifying receipt of property used, or to be used, by the state relative to a medical assistance program administered by the Department of Social Services and intending to defraud the state, make or deliver such document without completely knowing that the information on the document is true;

    vi.    Knowingly buy, or receive as a pledge of an obligation or debt, public property from an officer or employee of the state relative to a medical assistance program administered by the Department of Social Services, who lawfully may not sell or pledge the property; or

    vii.    Knowingly make, use or cause to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state under a medical assistance program administered by the Department of Social Services.

97.    In addition, Conn. Gen. Stat. § 53a-161c prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for furnishing any item or service for which payment may be made, in whole or in part, under the Connecticut Medicaid program.

98.    Defendants violated the Connecticut False Claims Act, Conn. Gen. Stat. § 17b-301a, *et seq*. by engaging in the conduct alleged herein.

99.    Defendants further violated the Connecticut False Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of

Connecticut by their deliberate and systematic violation of federal and state laws, including the FDCA, AKS, and Conn. Gen. Stat. § 53a-161c, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government healthcare programs.

100.    The State of Connecticut, by and through the Connecticut Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

101.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Connecticut in connection with Defendants' conduct. Compliance with applicable Connecticut statutes and regulations was also an express condition of payment of claims submitted to the State of Connecticut.

102.    Had the State of Connecticut known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

103.    As a result of Defendants' violations of the Connecticut False Claims Act, the State of Connecticut has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

104.    Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Connecticut False Claims Act on behalf of herself and the State of Connecticut.

105. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Connecticut, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF CONNECTICUT and against Defendants:

(1) Three times the amount of actual damages which the State of Connecticut has sustained as a result of Defendants' conduct;

(2) A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Connecticut;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

To Plaintiff-Relator:

(1) The maximum amount allowed pursuant to Connecticut False Claims Act, Conn. Gen. Stat. § 17b-301a *et seq*. and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(2) An award of reasonable attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT VI – DELAWARE FALSE CLAIMS AND REPORTING ACT

105. Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

106. This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Delaware to recover treble damages and civil penalties under the Delaware False Claims and Reporting Act, Title 6, Chapter 12 of the Delaware Code.

107. 6 Del. C. § 1201(a) provides liability for any person who:

(1) knowingly presents, or causes to be presented, directly or indirectly, to an officer or employee of the Government a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, directly or indirectly, a false record or statement to get a false or fraudulent claim paid or approved; and/or

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

108.    In addition, 31 Del. C. § 1005 prohibits the solicitation or receipt of any remuneration (including kickbacks, bribes or rebates) directly or indirectly, overtly or covertly, in cash or in kind, in return for the furnishing of any medical care or services for which payment may be made, in whole or in part, under any public assistance program.

109.    Defendants violated 31 Del. C. § 1005 by engaging in the conduct alleged herein.

110.    Defendants further violated 6 Del. C. § 1201(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Delaware by its deliberate and systematic violation of federal and state laws, including the FDCA, the AKS, and 31 Del. C. § 1005 and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

111.    The State of Delaware, by and through the Delaware Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

112.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Delaware in connection with

Defendants' conduct. Compliance with applicable Delaware statutes and regulations was also an express condition of payment of claims submitted to the State of Delaware.

113.     Had the State of Delaware known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

114.     As a result of Defendants' violations of 6 Del. C. § 1201(a), the State of Delaware has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

115.     Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to 6 Del. C. § 1203(b) on behalf of herself and the State of Delaware.

116.     This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Delaware, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF DELAWARE and against Defendants:

(1)     Three times the amount of actual damages which the State of Delaware has sustained as a result of Defendants' conduct;

(2)     A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Delaware;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)     The maximum amount allowed pursuant to 6 Del C. § 1205, and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT VII – FLORIDA FALSE CLAIMS ACT

117.     Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

118.     This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Florida to recover treble damages and civil penalties under the Florida False Claims Act, Fla. Stat. § 68.081, *et seq*.

119.     Fla. Stat. § 68.082(2) provides liability for any person who:

a.     knowingly presents, or causes to be presented, to an officer or employee of an agency a false or fraudulent claim for payment or approval;

b.     knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by an agency; or

c.     conspires to submit a false claim to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed-or paid.

120.     In addition, Fla. Stat. § 409.920 makes it a crime to:

(c) knowingly charge, solicit, accept, or receive anything of value, other than an authorized copayment from a Medicaid recipient, from any source in addition to the amount legally payable for an item or service provided to a Medicaid recipient under the Medicaid program or knowingly fail to credit the agency or its fiscal agent for any

payment received from a third- party source; or

* * *

(e) knowingly, solicit, offer, pay or receive any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for referring an individual to a person for the furnishing of any item or service for which payment may be made, in whole or in part, under the Medicaid program, or in return for obtaining, purchasing, leasing, ordering, or arranging, for or recommending, obtaining, purchasing, leasing, or ordering any goods, facility, item, or service, for which payment may be made, in whole or in part, under the Medicaid program.

121.    Fla. Stat. §456.054(2) also prohibits the offering, payment, solicitation, or receipt of a kickback to a healthcare provider, whether directly or indirectly, overtly or covertly, in cash or in kind, in exchange for referring or soliciting patients.

122.    Defendants violated Fla. Stat. § 409.920(c) and (e) and §456.054(2) by engaging in the conduct alleged herein.

123.    Defendants further violated Fla. Stat. § 68.082(2) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Florida by its deliberate and systematic violation of federal and state laws, including the FDCA, federal AKS, Fla. Stat. § 409.920(c) and (e) and §456.054(2) and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

124.    The State of Florida, by and through the Florida Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

125.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express

condition of payment of claims submitted to the State of Florida in connection with Defendant's conduct. Compliance with applicable Florida statutes and regulations was also an express condition of payment of claims submitted to the State of Florida.

126. Had the State of Florida known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

127. As a result of Defendants' violations of Fla. Stat. § 68.082(2), the State of Florida has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

128. Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Fla. Stat. § 68.083(2) on behalf of herself and the State of Florida.

129. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Florida, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully request this Court to award the following damages to STATE OF FLORIDA and against Defendants:

(1) Three times the amount of actual damages which the State of Florida has sustained as a result of Defendants' conduct;

(2) A civil penalty up to the maximum permitted by law for each false claim which Defendants caused to be presented to the State of Florida;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

29

To Plaintiff-Relator:

    (1)    The maximum amount allowed pursuant to Fla. Stat. § 68.085 and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

    (3)    An award of reasonable attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

## COUNT VIII – GEORGIA FALSE MEDICAID CLAIMS ACT

130.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

131.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Georgia to recover treble damages and civil penalties under the Georgia False Medicaid Claims Act, Ga. Code Ann., § 49-4-168, *et seq*.

132.    The Georgia False Medicaid Claims Act imposes liability on any person who:

    (1)    Knowingly presents or causes to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval;

    (2)    Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Georgia Medicaid program;

    (3)    Conspires to defraud the Georgia Medicaid program by getting a false or fraudulent claim allowed or paid;

    (4)    Has possession, custody, or control of property or money used or to be used by the Georgia Medicaid program and, intending to defraud the Georgia Medicaid program or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate of receipt;

    (5)    Being authorized to make or deliver a document certifying receipt of property used, or to be used, by the Georgia Medicaid program and, intending to defraud the Georgia

Medicaid program, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(6) Knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Georgia Medicaid program who lawfully may not sell or pledge the property; or

(7) Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay, repay, or transmit money or property to the State of Georgia.

133.    Defendants violated the Georgia False Medicaid Claims Act, Ga. Code Ann., § 49- 4-168, *et seq.*, by engaging in the conduct alleged herein.

134.    Defendants further violated the Georgia False Medicaid Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Georgia by its deliberate and systematic violation of federal and state laws, including the FDCA and the federal AKS, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government healthcare programs.

135.    The State of Georgia, by and through the Georgia Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

136.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied and, upon information and belief, also an express condition of payment of claims submitted to the State of Georgia in connection with Defendants' conduct. Compliance with applicable Georgia statutes and regulations was also an express condition of payment of claims submitted to the State of Georgia.

137.    Had the State of Georgia known that Defendants was violating the federal and

state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

138.    As a result of Defendants' violations of the Georgia False Medicaid Claims Act, the State of Georgia has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

139.    Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Georgia False Medicaid Claims Act on behalf of herself and the State of Georgia.

140.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Georgia, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF GEORGIA and against Defendants:

(1)    Three times the amount of actual damages which the State of Georgia has sustained as a result of Defendants' conduct;

(2)    A civil penalty of not less than $5,000 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Georgia;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)    The maximum amount allowed pursuant to Georgia False Medicaid Claims Act, Ga. Code Ann., § 49-4-168, and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT IX – HAWAII FALSE CLAIMS ACT

141.     Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

142.     This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Hawaii to recover treble damages and civil penalties under the Hawaii False Claims Act, Haw. Rev. Stat. § 661-21, *et seq*.

143.     Haw. Rev. Stat. § 661-21(a) provides liability for any person who-

(1) knowingly presents, or causes to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid for by the state;

(3) conspires to defraud the state by getting a false or fraudulent claim allowed or paid; and/or

\* \* \*

(8) is a beneficiary of an inadvertent submission of a false claim to the State, who subsequently discovers the falsity of the claim, and fails to disclose the false claim to the State within a reasonable time after discovery of the false claim.

144.     Defendants violated Haw. Rev. Stat. §661-21(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Hawaii by its deliberate and systematic violation of federal and state laws, including the FDCA and AKS, and by virtue of the fact that none of the claims submitted in connection with its conduct were even

eligible for reimbursement by the Government Healthcare Programs.

145.   The State of Hawaii, by and through the Hawaii Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

146.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied and, upon information and belief, also an express condition of payment of claims submitted to the State of Hawaii in connection with Defendants' conduct. Compliance with applicable Hawaii statutes and regulations was also an express condition of payment of claims submitted to the State of Hawaii.

147.   Had the State of Hawaii known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

148.   As a result of Defendants' violations of Haw. Rev. Stat. § 661-21(a), the State of Hawaii has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

149.   Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Haw. Rev. Stat. § 661-25(a) on behalf of herself and the State of Hawaii.

150.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Hawaii, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF HAWAII and against Defendants:

    (1)    Three times the amount of actual damages which the State of Hawaii has sustained as a result of Defendants' illegal conduct;

    (2)    A civil penalty up to the maximum permitted by law for each false claim which Defendants caused to be presented to the State of Hawaii;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

    (1)    The maximum amount allowed pursuant to Haw. Rev. Stat. §661-27 and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

    (3)    An award of reasonable attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

## COUNT X – ILLINOIS WHISTLEBLOWER REWARD AND PROTECTION ACT

151.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

152.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Illinois to recover treble damages and civil penalties under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175, *et seq.*

153.    740 ILCS 175/3(a) provides liability for any person who:

(1) knowingly presents, or causes to be presented, to an officer or employee of the State a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or

35

approved by the State; or

(3) conspires to defraud the State by getting a false or fraudulent
claim allowed or paid.

154.    In addition, 305 ILCS 5/8A-3(b) of the Illinois Public Aid Code (Vendor Fraud and Kickbacks) prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for furnishing any item or service for which payment may be made, in whole or in part, under the Illinois Medicaid program.

155.    Defendants violated 305 ILCS 5/8A-3(b) by engaging in the conduct alleged herein.

156.    Defendants furthermore violated 740 ILCS 175/3(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Illinois by its deliberate and systematic violation of federal and state laws, including the FDCA, federal AKS, and the Illinois Vendor Fraud and Kickback statute, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

157.    The State of Illinois, by and through the Illinois Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

158.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Illinois in connection with Defendants' conduct. Compliance with applicable Illinois statutes and regulations was also an express condition of payment of claims submitted to the State of Illinois.

159.    Had the State of Illinois known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

160.    As a result of Defendants' violations of 740 ILCS 175/3(a), the State of Illinois has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

161.    Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to 740 ILCS 175/3(b) on behalf of herself and the State of Illinois.

162.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Illinois, in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the STATE OF ILLINOIS and against Defendants:

      (1) Three times the amount of actual damages which the State of Illinois has sustained as a result of Defendant's conduct;

      (2) A civil penalty up to the maximum permitted by law for each false claim which Defendant caused to be presented to the State of Illinois;

      (3) Prejudgment interest; and

      (4) All costs incurred in bringing this action.

To Plaintiff-Relator:

      (1) The maximum amount allowed pursuant to 740 ILCS 175/4(d) and/or any other applicable provision of law;

      (2) Reimbursement for reasonable expenses which Plaintiff-Relator incurred in

connection with this action;

(3) An award of reasonable attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT XI --
## INDIANA FALSE CLAIMS AND WHISTLEBLOWER PROTECTION ACT

163. Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

164. This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Indiana to recover treble damages and civil penalties under the Indiana False Claims and Whistleblower Protection Act, Indiana Code 5-11-5.5, *et seq.*, which imposes liability on:

(b) A person who knowingly or intentionally:

(1) presents a false claim to the state for payment or approval;

(2) makes or uses a false record or statement to obtain payment or approval of a false claim from the state;

(3) with intent to defraud the state, delivers less money or property to the state than the amount recorded on the certificate or receipt the person receives from the state;

(4) with intent to defraud the state, authorizes issuance of a receipt without knowing that the information on the receipt is true;

(5) receives public property as a pledge of an obligation on a debt from an employee who is not lawfully authorized to sell or pledge the property;

(6) makes or uses a false record or statement to avoid an obligation to pay or transmit property to the state;

(7) conspires with another person to perform an act described in subdivisions (1) through (6); or

(8) causes or induces another person to perform an act described in subdivisions (1) through (6) . . ..

165.     In addition, Indiana Code § 5-11-5.5, *et seq.,* prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for furnishing any item or service for which payment may be made, in whole or in part, under the Indiana Medicaid program.

166.     Defendants violated Indiana's False Claims Act by engaging in the conduct alleged herein.

167.     Defendants further violated Indiana's False Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Indiana by its deliberate and systematic violation of federal and state laws, including the FDCA and federal AKS, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government healthcare programs.

168.     The State of Indiana, by and through the Indiana Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

169.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Indiana in connection with Defendants' conduct. Compliance with applicable Indiana statutes and regulations was also an express condition of payment of claims submitted to the State of Indiana.

170.     Had the State of Indiana known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by

healthcare providers and third-party payers in connection with that conduct.

171.    As a result of Defendants' violations of Indiana's False Claims Act, the State of Indiana has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

172.    Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Indiana Code § 5-11- 5.5, *et seq.,* on behalf of herself and the State of Indiana.

173.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Indiana, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF INDIANA and against Defendants:

(1)    Three times the amount of actual damages which the State of Indiana has sustained as a result of Defendant's conduct;

(2)    A civil penalty up to the maximum permitted by law for each false claim which Defendant caused to be presented to the State of Indiana;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)    The maximum amount allowed pursuant to Indiana Code § 5-11- 5.5, *et seq.,* and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XII - IOWA FALSE CLAIMS LAW

174. Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

175. This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Iowa to recover treble damages and civil penalties under the Iowa False Claims Law, I.C.A. § 685.1, *et seq*.

176. Iowa False Claims Law, I.C.A. § 685.2, in pertinent part, provides for liability for any person who:

      a. Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

      b. Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; and/or

      c. Conspires to commit a violation of paragraph "a," "b," "d," "e," "f," or "g."

177. Defendants violated the Iowa False Claims Law, I.C.A. § 685.1, *et seq*., by engaging in the conduct described herein.

178. Defendants furthermore violated the Iowa False Claims Law, I.C.A. § 685.1, *et seq*., and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Iowa by its deliberate and systematic violation of federal and state laws, including the FDCA, federal AKS, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

179. The State of Iowa, by and through the Iowa Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

180. Compliance with applicable Medicare, Medicaid and the various other federal and

state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Iowa in connection with Defendants' conduct. Compliance with applicable Iowa statutes and regulations was also an express condition of payment of claims submitted to the State of Iowa.

181.     Had the State of Iowa known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

182.     As a result of Defendants' violations of the Iowa False Claims Law, I.C.A. § 685.1, *et seq*., the State of Iowa has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

183.     Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Iowa False Claims Law, I.C.A. § 685.1, *et seq*., on behalf of herself and the State of Iowa.

184.     This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Iowa, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF IOWA and against Defendants:

(1)     Three times the amount of actual damages which the State of Iowa has sustained as a result of Defendant's conduct;

(2)     A civil penalty up to the maximum permitted by law for each false claim which Defendant caused to be presented to the State of Iowa;

(3)     Prejudgment interest; and/or

(4)     All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)     The maximum amount allowed pursuant to Iowa False Claims Law, I.C.A. § 685.1, *et seq.*, and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XIII
## LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW

185.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

186.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Louisiana to recover treble damages and civil penalties under the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. § 437.1, *et seq.*

187.    La. Rev. Stat. Ann. § 438.3 provides:

(A) No person shall knowingly present or cause to be presented a false or fraudulent claim;

(B)     No person shall knowingly engage in misrepresentation to obtain, or attempt to obtain, payment from medical assistance program funds; and

(C)     No person shall conspire to defraud, or attempt to defraud, the medical assistance programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim.

188.    In addition, La. Rev. Stat. Ann. § 438.2(A) prohibits the solicitation, receipt, offering or payment of any financial inducements, including kickbacks, bribes and/or rebates,

directly or indirectly, overtly or covertly, in cash or in kind, for furnishing healthcare goods or services paid for, in whole or in part, by the Louisiana medical assistance programs.

189.    Defendants violated La. Rev. Stat. Ann. § 438.2(A) by engaging in the conduct alleged herein.

190.    Defendants further violated La. Rev. Stat. Ann. §438.3 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Louisiana by its deliberate and systematic violation of federal and state laws, including the FDCA, federal AKS and La. Rev. Stat. Ann. § 438.2(A), and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government healthcare programs.

191.    The State of Louisiana, by and through the Louisiana Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

192.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Louisiana in connection with Defendants' conduct. Compliance with applicable Louisiana statutes and regulations was also an express condition of payment of claims submitted to the State of Louisiana.

193.    Had the State of Louisiana known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

194. As a result of Defendants' violations of La. Rev. Stat. Ann. § 438.3, the State of Louisiana has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

195. Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to La. Rev. Stat. Ann. §439.1(A) on behalf of herself and the State of Louisiana.

196. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Louisiana, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF LOUISIANA and against Defendants:

(1) Three times the amount of actual damages which the State of Louisiana has sustained as a result of Defendants' conduct;

(2) A civil penalty up to the maximum permitted by law for each false claim which Defendant caused to be presented to the State of Louisiana;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

To Plaintiff-Relator:

(1) The maximum amount allowed pursuant to La. Rev. Stat. § 439.4(A) and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3) An award of reasonable attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT XIV – MASSACHUSETTS FALSE CLAIMS ACT

197.     Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

198.     This is a *qui tam* action brought by Plaintiff-Relator on behalf of the Commonwealth of Massachusetts for treble damages and penalties under the Massachusetts False Claims Act, Mass. Gen. Laws Ann. Chap. 12 § 5A, *et seq*.

199.     Mass. Gen. Laws Ann. Chap. 12 § 5B, provides liability for any person who:

(1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval of a claim by the commonwealth;

(3) conspires to defraud the commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim; or

* * *

(9) is a beneficiary of an inadvertent submission of a false claim to the commonwealth or political subdivision thereof, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the commonwealth or political subdivision within a reasonable time after discovery of the false claim.

200.     In addition, Mass. Gen. Laws Ann. Chap. 118E § 41 prohibits the solicitation, receipt or offering of any remuneration, including any bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for furnishing any good, service or item for which payment may be made, in whole or in part, under the Massachusetts Medicaid program.

201.     Defendants violated Mass. Gen. Laws Ann. Chap. 118E § 41 by engaging in the conduct alleged herein.

202.     Defendants further violated Mass. Gen. Laws Ann. Chap. 12 § 5B and knowingly caused hundreds of thousands of false claims to be made, used and presented to the Commonwealth of Massachusetts by its deliberate and systematic violation of federal and state laws, including the FDCA, federal AKS, Mass. Gen. Law Ann. Chap. 118E § 41 and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

203.     The Commonwealth of Massachusetts, by and through the Massachusetts Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

204.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the Commonwealth of Massachusetts in connection with Defendant's conduct. Compliance with applicable Massachusetts statutes and regulations was also an express condition of payment of claims submitted to the Commonwealth of Massachusetts.

205.     Had the Commonwealth of Massachusetts known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

206.     As a result of Defendants' violations of Mass. Gen. Laws Ann. Chap. 12 § 5B, the Commonwealth of Massachusetts has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

207. Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations in this Complaint, who has brought this action pursuant to Mass. Gen. Laws Ann. Chap. 12 § 5(c)(2), on behalf of herself and the Commonwealth of Massachusetts.

208. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the Commonwealth of Massachusetts, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the COMMONWEALTH OF MASSACHUSETTS and against Defendants:

    (1)    Three times the amount of actual damages which the Commonwealth of Massachusetts has sustained as a result of Defendant's conduct;

    (2)    A civil penalty up to the maximum permitted by law for each false claim which Defendant caused to be presented to the Commonwealth of Massachusetts;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

    (1)    The maximum amount allowed pursuant to Mass. Gen. Laws Ann. Chap. 12, §5F and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

    (3)    An award of reasonable attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

## COUNT XV – MICHIGAN MEDICAID FALSE CLAIMS ACT

209.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

210.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Michigan to recover treble damages and civil penalties under Michigan's Medicaid False Claims Act, Mich. Comp. Laws Ann. § 400.603 *et seq.*, which provides in pertinent part as follows:

> Sec. 3. (1) A person shall not knowingly make or cause to be made a false statement or false representation of a material fact in an application for medicaid benefits; and
>
> (2) A person shall not knowingly make or cause to be made a false statement or false representation of a material fact for use in determining rights to a medicaid benefit....

211.    In addition, Mich. Comp. Laws Ann. § 400.604 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for furnishing any item or service for which payment may be made, in whole or in part, under the Michigan Medicaid program.

212.    Defendants violated the Michigan Medicaid False Claims Act by engaging in the conduct alleged herein.

213.    Defendants further violated Michigan law and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Michigan by its deliberate and systematic violation of federal and state laws, including the FDCA and federal AKS, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government healthcare programs.

214.    The State of Michigan, by and through the Michigan Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

215.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Michigan in connection with Defendants' conduct. Compliance with applicable Michigan statutes and regulations was also an express condition of payment of claims submitted to the State of Michigan.

216.     Had the State of Michigan known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

217.     As a result of Defendants' violations of the Michigan Medicaid False Claims Act, the State of Michigan has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

218.     Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to the Michigan Medicaid False Claims Act on behalf of themselves and the State of Michigan.

219.     This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Michigan, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF MICHIGAN and against Defendants:

    (1)     Three times the amount of actual damages which the State of Michigan has sustained as a result of Defendants' conduct;

    (2)     A civil penalty up to the maximum permitted by law for each false

claim which Defendants caused to be presented to the State of Michigan;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)    The maximum amount allowed pursuant to the Medicaid False Claims Act and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XVI – MINNESOTA FALSE CLAIMS ACT

220.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

221.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Minnesota to recover treble damages and civil penalties under the Minnesota False Claims Act, M.S.A. § 15C.01, *et seq*.

222.    Minnesota False Claims Act, M.S.A. § 15C.02, provides for liability for any person who:

(1) knowingly presents, or causes to be presented, to an officer or employee of the state or a political subdivision a false or fraudulent claim for payment or approval;

(2) knowingly makes or uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state or a political subdivision; knowingly conspires to either present a false or fraudulent claim to the state or a political subdivision for payment or approval or makes, uses, or causes to be made or used a false record or statement to obtain payment or approval of a false or fraudulent claim;

(3) has possession, custody, or control of public property or money used, or to be used, by the state or a political subdivision and knowingly delivers or causes to be delivered to the state or a political subdivision less money or property than the amount for which the person receives a receipt;

(4) is authorized to prepare or deliver a receipt for money or property used, or to be used, by the state or a political subdivision and knowingly prepares or delivers a receipt that falsely represents the money or property;

(5) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state or a political subdivision who lawfully may not sell or pledge the property; and/or

(6) knowingly makes or uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state or a political subdivision.

223.    In addition, M.S.A. § 256B.0914, prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for furnishing any item or service for which payment may be made, in whole or in part, under the Minnesota Medicaid program.

224.    Defendants violated the Minnesota False Claims Act by engaging in the conduct alleged herein.

225.    Defendants further violated the Minnesota False Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Minnesota by its deliberate and systematic violation of federal and state laws, including the FDCA, federal AKS and M.S.A. § 256B.0914, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

226.     The State of Minnesota, by and through the Minnesota Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

227.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Minnesota in connection with Defendants' conduct. Compliance with applicable Minnesota statutes and regulations was also an express condition of payment of claims submitted to the State of Minnesota.

228.     Had the State of Minnesota known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

229.     As a result of Defendants' violations of the Minnesota False Claims Act, the State of Minnesota has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

230.     Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Minnesota False Claims Act, on behalf of herself and the State of Minnesota.

231.     This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Minnesota, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF MINNESOTA and against Defendants:

(1)     Three times the amount of actual damages which the State of Minnesota has sustained as a result of Defendants' conduct;

(2)     A civil penalty of not less than $5,000 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Minnesota;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)     The maximum amount allowed pursuant to the Minnesota False Claims Act and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XVII – MONTANA FALSE CLAIMS ACT

232.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

233.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Montana to recover treble damages and civil penalties under the Montana False Claims Act, MCA § 17-8-401, *et seq*.

234.    Montana's False Claims Act, MCA § 17-8-403, provides for liability for any person who:

a.   knowingly presents or causes to be presented to an officer or employee of the governmental entity a false or fraudulent claim for payment or approval;

54

b. knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the governmental entity;

c. conspires to defraud the governmental entity by getting a false or fraudulent claim allowed or paid by the governmental entity;

d. has possession, custody, or control of public property or money used or to be used by the governmental entity and, with the intent to defraud the governmental entity or to willfully conceal the property, delivers or causes to be delivered less property or money than the amount for which the person receives a certificate or receipt;

e. is authorized to make or deliver a document certifying receipt of property used or to be used by the governmental entity and, with the intent to defraud the governmental entity or to willfully conceal the property, makes or delivers a receipt without knowing that the information on the receipt is true;

f. knowingly buys or receives as a pledge of an obligation or debt public property of the governmental entity from any person who may not lawfully sell or pledge the property;

g. knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the governmental entity or its contractors; or

h. as a beneficiary of an inadvertent submission of a false or fraudulent claim to the governmental entity, subsequently discovers the falsity of the claim or that the claim is fraudulent and fails to disclose the false or fraudulent claim to the governmental entity within a reasonable time after discovery of the false or fraudulent claim.

235. In addition, MCA § 45-6-313 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for furnishing any item or service for which payment may be made, in whole or in part, under the Montana Medicaid program.

236. Defendants violated the Montana False Claims Act by engaging in the conduct alleged herein.

237. Defendants furthermore violated the Montana False Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Montana by its deliberate and systematic violation of federal and state laws, including the FDCA, federal AKS and MCA § 45-6-313, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the Government Healthcare Programs.

238. The State of Montana, by and through the Montana Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

239. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Montana in connection with Defendants' conduct. Compliance with applicable Montana statutes and regulations was also an express condition of payment of claims submitted to the State of Montana.

240. Had the State of Montana known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

241. As a result of Defendants' violations of the Montana False Claims Act, the State of Montana has been damaged in an amount far in excess of millions of dollars, exclusive of

interest.

242.    Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Montana False Claims Act, on behalf of herself and the State of Montana.

243.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Montana, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF MONTANA and against Defendants:

(1)    Three times the amount of actual damages which the State of Montana has sustained as a result of Defendants' conduct;

(2)    A civil penalty up to the maximum permitted by law for each false claim which Defendant caused to be presented to the State of Montana;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)    The maximum amount allowed pursuant to Montana False Claims Act and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XVII – NEVADA FALSE CLAIMS ACT

244.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

245.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of

Nevada to recover treble damages and civil penalties under the Nevada False Claims Act, N.R.S. § 357.010, *et seq.*

246.    N.R.S. § 357.040(1) provides liability for any person who:

   a.   knowingly presents or causes to be presented a false claim for payment or approval;

   b.   knowingly makes or uses, or causes to be made or used, a false record or statement to obtain payment or approval of a false claim;

   c.   conspires to defraud by obtaining allowance or payment of a false claim; and/or

*   *   *

   h.   is a beneficiary of an inadvertent submission of a false claim and, after
   discovering the falsity of the claim, fails to disclose the falsity
   to the state or political subdivision within a reasonable time.

247.    In addition, N.R.S. § 422.560 prohibits the solicitation, acceptance or receipt of anything of value in connection with the provision of medical goods or services for which payment may be made, in whole or in part, under the Nevada Medicaid program.

248.    Defendants violated N.R.S. § 422.560 by engaging in the conduct alleged herein.

249.    Defendants further violated N.R.S. § 357.040(1) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Nevada by its deliberate and systematic violation of federal and state laws, including the FDCA, federal AKS and N.R.S. § 422.560, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government healthcare programs.

250.    The State of Nevada, by and through the Nevada Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

251. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Nevada in connection with Defendants' conduct. Compliance with applicable Nevada statutes and regulations was also an express condition of payment of claims submitted to the State of Nevada.

252. Had the State of Nevada known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

253. As a result of Defendants' violations of N.R.S. § 357.040(1), the State of Nevada has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

254. Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.R.S. § 357.080(1), on behalf of herself and the State of Nevada.

255. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Nevada in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests that this Court award the following damages to the STATE OF NEVADA and against Defendants:

(1) Three times the amount of actual damages which the State of Nevada has sustained as a result of Defendants' conduct;

(2) A civil penalty of not less than $2,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Nevada;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)     The maximum amount allowed pursuant to N.R.S. § 357.210 and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

### COUNT XIX – NEW JERSEY FALSE CLAIMS ACT

256.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

257.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of New Jersey to recover treble damages and civil penalties under the New Jersey False Claims Act, N.J.S.A. § 2A:32C-1, *et seq.*

258.    The New Jersey False Claims Act, N.J.S.A. § 2A:32C-3, provides for liability for any person who:

a.    Knowingly presents or causes to be presented to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false or fraudulent claim for payment or approval;

b.    Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State;

c.    Conspires to defraud the State by getting a false or fraudulent claim allowed or paid by the State;

d.    Has possession, custody, or control of public property or money used or to be used by the State and knowingly delivers

or causes to be delivered less property than the amount for which the person receives a certificate or receipt;

e. Is authorized to make or deliver a document certifying receipt of property used or to be used by the State and, intending to defraud the entity, makes or delivers a receipt without completely knowing that the information on the receipt is true;

f. Knowingly buys, or receives as a pledge of an obligation or debt, public property from any person who lawfully may not sell or pledge the property; or

g. Knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State.

259.    In addition, N.J.S.A. § 30:4D-17 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for furnishing any item or service for which payment may be made in whole or in part under the New Jersey Medicaid program.

260.    Defendants violated the New Jersey False Claims Act by engaging in the conduct alleged herein.

261.    Defendants further violated the New Jersey False Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of New Jersey by its deliberate and systematic violation of federal and state laws, including the FDCA, federal AKS and N.J.S.A. § 30:4D-17, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government healthcare programs.

262.    The State of New Jersey, by and through the New Jersey Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

263.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of New Jersey in connection with Defendants' conduct. Compliance with applicable New Jersey statutes and regulations was also an express condition of payment of claims submitted to the State of New Jersey.

264.     Had the State of New Jersey known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

265.     As a result of Defendants' violations of the New Jersey False Claims Act, the State of New Jersey has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

266.     Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the New Jersey False Claims Act, on behalf of herself and the State of New Jersey.

267.     This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of New Jersey, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF NEW JERSEY and against Defendants:

  (1) Three times the amount of actual damages which the State of New Jersey has sustained as a result of Defendants' conduct;

  (2) A civil penalty up to the maximum permitted by law for each false

claim which Defendants caused to be presented to the State of New Jersey;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

    (1)    The maximum amount allowed pursuant to New Jersey False Claims Act and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

    (3)    An award of reasonable attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

## COUNT XX – NEW MEXICO MEDICAID FALSE CLAIMS ACT

268.    Plaintiff-Relator reallege and incorporate by reference the prior paragraphs as though fully set forth herein.

269.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of New Mexico to recover treble damages and civil penalties under the New Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. §§ 27-14-1, *et seq.*, which provides, in pertinent part, as follows:

A person shall not:

    (1)    knowingly present, or cause to be presented, to an employee, officer or agent of the state or to a contractor, grantee, or other recipient of state funds, a false or fraudulent claim for payment or approval;

    (2)    knowingly make or use, or cause to be made or used, a false, misleading or fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim; or

    (3)    conspire to defraud the state by obtaining approval or payment on a false or fraudulent claim ....

270.     In addition, N.M. Stat. Ann. §§ 30-44-7, *et seq.*, prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for furnishing any item or service for which payment may be made, in whole or in part, under the New Mexico Medicaid program.

271.     Defendants violated N.M. Stat. Ann. § 30-44-7, *et seq.*, by engaging in the conduct alleged herein.

272.     Defendants further violated N.M. Stat. Ann. §§ 27-14-1, *et seq.*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of New Mexico by its deliberate and systematic violation of federal and state laws, including the FDCA and federal AKS, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government healthcare programs.

273.     The State of New Mexico, by and through the New Mexico Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

274.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of New Mexico in connection with Defendants' conduct. Compliance with applicable New Mexico statutes and regulations was also an express condition of payment of claims submitted to the State of New Mexico.

275.     Had the State of New Mexico known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by

healthcare providers and third-party payers in connection with that conduct.

276. As a result of Defendants' violations of N.M. Stat. Ann. §§ 27-14-1, *et seq.*, the State of New Mexico has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

277. Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.M. Stat. Ann. §§ 27-14-1, *et seq.*, on behalf of herself and the State of New Mexico.

278. This Court is requested to accept supplemental jurisdiction of this related state claim, as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of New Mexico, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF NEW MEXICO and against Defendants:

(1) Three times the amount of actual damages which the State of New Mexico has sustained as a result of Defendants' conduct;

(2) A civil penalty up to the maximum permitted by law for each false claim which Defendant caused to be presented to the State of New Mexico;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

To Plaintiff-Relator:

(1) The maximum amount allowed pursuant to N.M. Stat. Ann. §§ 27-14-1, *et seq.*, and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3) An award of reasonable attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT XXI – NEW YORK FALSE CLAIMS ACT

279.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

280.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of New York to recover treble damages and civil penalties under the New York State False Claims Act, State Finance Law § 189, which imposes liability on any person who:

    a.  knowingly presents, or causes to be presented, to any employee, officer or agent of the state or local government, a false or fraudulent claim for payment or approval;

    b.  knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state or local government; or

    c.  conspires to defraud the State by getting a false or fraudulent claim allowed or paid.

281.    In addition, New York law prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for furnishing any item or service for which payment may be made, in whole or in part, under the New York Medicaid program.

282.    Defendants violated New York law by engaging in the conduct alleged herein.

283.    Defendants further violated the New York State False Claims Act, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of New York, by its deliberate and systematic violation of federal and state laws, including the FDCA and federal AKS, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government healthcare programs.

284.    The State of New York, by and through the New York Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted

by healthcare providers and third-party payers in connection therewith.

285.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of New York in connection with Defendants' conduct.  Compliance with applicable New York statutes and regulations was also an express condition of payment of claims submitted to the State of New York.

286.     Had the State of New York known that Defendants was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

287.     As a result of Defendants' violations of the New York State False Claims Act, the State of New York has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

288.     Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the New York State False Claims Act, on behalf of herself and the State of New York.

289.     This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of New York, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully request this Court to award the following damages to the STATE OF NEW YORK and against Defendants:

> (1)     Three times the amount of actual damages which the State of New York has sustained as a result of Defendants' conduct;

(2)     A civil penalty up to the maximum permitted by law for each false claim which Defendant caused to be presented to the State of New York;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)     The maximum amount allowed pursuant to the New York State False Claims Act, and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## <u>COUNT XXII – NORTH CAROLINA FALSE CLAIMS ACT</u>

290.     Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

291.     This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of North Carolina to recover treble damages and civil penalties under the North Carolina False Claims Act, N.C.G.S.A. § 1-605, *et seq*.

292.     North Carolina's False Claims Act, N.C.G.S.A. § 1-607, provides for liability for any person who:

(1) Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval;

(2) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(3) Conspires to commit a violation of subdivision (1), (2), (4), (5), (6), or (7) of this section;

(4) Has possession, custody, or control of property or money used

68

or to be used by the State and knowingly delivers or causes to be delivered less than all of that money or property;

(5) Is authorized to make or deliver a document certifying receipt of property used or to be used by the State and, intending to defraud the State, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(6) Knowingly buys, or receives as a pledge of an obligation or debt, public property from any officer or employee of the State who lawfully may not sell or pledge the property; or

(7) Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the State, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the State.

293.    In addition, N.C.G.S.A. § 108A-63 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for furnishing any item or service for which payment may be made, in whole or in part, under the North Carolina Medicaid program.

294.    Defendants violated the North Carolina False Claims Act by engaging in the conduct alleged herein.

295.    Defendants further violated the North Carolina False Claims Act, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of North Carolina, by its deliberate and systematic violation of federal and state laws, including the FDCA, federal AKS and N.C.G.S.A. § 108A-63, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government healthcare programs.

296.    The State of North Carolina, by and through the North Carolina Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the

claims submitted by healthcare providers and third-party payers in connection therewith.

297. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of North Carolina in connection with Defendants' conduct. Compliance with applicable North Carolina statutes and regulations was also an express condition of payment of claims submitted to the State of North Carolina.

298. Had the State of North Carolina known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

299. As a result of Defendants' violations of the North Carolina False Claims Act, the State of North Carolina has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

300. Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the North Carolina False Claims Act, on behalf of herself and the State of North Carolina.

301. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of North Carolina, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF NORTH CAROLINA and against Defendants:

> (1) Three times the amount of actual damages which the State of North Carolina has sustained as a result of Defendants'

conduct;

(2)     A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of North Carolina;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)     The maximum amount allowed pursuant to North Carolina False Claims Act and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XXIII – OKLAHOMA MEDICAID FALSE CLAIMS ACT

302.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

*303.*    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Oklahoma to recover treble damages and civil penalties under the Oklahoma Medicaid False Claims Act, 63 Okl. St. Ann. § 5053, *et seq.*

304.    Oklahoma's Medicaid False Claims Act, 63 Okl. St. Ann. § 5053.1, provides for liability for any person who:

1.    Knowingly presents, or causes to be presented, to an officer or employee of the State of Oklahoma, a false or fraudulent claim for payment or approval;

2.    Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

3. Conspires to defraud the State by getting a false or fraudulent claim allowed or paid;

4. Has possession, custody, or control of property or money used, or to be used, by the state and, intending to defraud the State or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

5. Is authorized to make or deliver a document certifying receipt of property used, or to be used, by the State and, intending to defraud the State, makes or delivers the receipt without completely knowing that the information on the receipt is true;

6. Knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state, who lawfully may not sell or pledge the property; or

7. Knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State.

305. In addition, 56 Okl. St. Ann. § 1005 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for furnishing any item or service for which payment may be made in whole or in part, under the Oklahoma Medicaid program.

306. Defendants violated the Oklahoma Medicaid False Claims Act by engaging in the conduct alleged herein.

307. Defendants furthermore violated the Oklahoma Medicaid False Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Oklahoma by its deliberate and systematic violation of federal and state laws, including the FDCA, federal AKS and 56 Okl. St. Ann. § 1005, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government healthcare programs.

308.    The State of Oklahoma, by and through the Oklahoma Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

309.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Oklahoma in connection with Defendants' conduct. Compliance with applicable Oklahoma statutes and regulations was also an express condition of payment of claims submitted to the State of Oklahoma.

310.    Had the State of Oklahoma known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

311.    As a result of Defendants' violations of the Oklahoma Medicaid False Claims Act, the State of Oklahoma has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

312.    Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Oklahoma Medicaid False Claims Act, on behalf of herself and the State of Oklahoma.

313.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Oklahoma, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF OKLAHOMA and against Defendants:

(1)     Three times the amount of actual damages which the State of Oklahoma has sustained as a result of Defendants' conduct;

(2)     A civil penalty up to the maximum permitted by law for each false claim which Defendant caused to be presented to the State of Oklahoma;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)     The maximum amount allowed pursuant to Oklahoma Medicaid False Claims Act and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

### COUNT XXIV – RHODE ISLAND FALSE CLAIMS ACT

314.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

315.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Rhode Island to recover treble damages and civil penalties under the Rhode Island False Claims Act, Gen. Laws 1956, § 9-1.1-1, *et seq.*

316.    Rhode Island's False Claims Act, Gen. Laws 1956, § 9-1.1-3, provides for liability for any person who:

(1) knowingly presents, or causes to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

(3) conspires to defraud the state by getting a false or fraudulent claim allowed or paid;

(4) has possession, custody, or control of property or money used, or to be used, by the state and, intending to defraud the state or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

(5) authorized to make or deliver a document certifying receipt of property used, or to be used, by the state and, intending to defraud the state, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(6) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state, or a member of the guard, who lawfully may not sell or pledge the property; or

(7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state.

317. In addition, Gen. Laws 1956, § 40-8.2-9 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for furnishing any item or service for which payment may be made, in whole or in part, under the Rhode Island Medicaid program.

318. Defendants violated the Rhode Island False Claims Act by engaging in the conduct alleged herein.

319. Defendants further violated the Rhode Island False Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Rhode Island by its deliberate and systematic violation of federal and state laws, including the FDCA, federal AKS and Gen. Laws 1956, § 40-8.2-9, and by virtue of the fact that none of the

claims submitted in connection with its conduct were even eligible for reimbursement by the government healthcare programs.

320.     The State of Rhode Island, by and through the Rhode Island Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

321.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Rhode Island in connection with Defendants' conduct. Compliance with applicable Rhode Island statutes and regulations was also an express condition of payment of claims submitted to the State of Rhode Island.

322.     Had the State of Rhode Island known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

323.     As a result of Defendants' violations of the Rhode Island False Claims Act, the State of Rhode Island has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

324.     Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Rhode Island False Claims Act, on behalf of herself and the State of Rhode Island.

325.     This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts

separate damages to the State of Rhode Island, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF RHODE ISLAND and against Defendants:

(1)     Three times the amount of actual damages which the State of Rhode Island has sustained as a result of Defendant's conduct;

(2)     A civil penalty up to the maximum permitted by law for each false claim which Defendants caused to be presented to the State of Rhode Island;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)     The maximum amount allowed pursuant to Rhode Island False Claims Act and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XXV – TENNESSEE FALSE CLAIMS ACT

326.     Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

327.     This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Tennessee to recover treble damages and civil penalties under the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181, *et seq.*

328.     Section 71-5-182(a)(1) provides liability for any person who:

(A)     presents, or causes to be presented to the state, a claim for payment under the Medicaid program knowing such claim is false or fraudulent;

77

(B)     makes or uses, or causes to be made or used, a record or statement to get a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false; or

(C)     conspires to defraud the State by getting a claim allowed or paid under the Medicaid program knowing such claim is false or fraudulent.

329.     Defendant violated Tenn. Code Ann. § 71-5-1 82(a)(1) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Tennessee by its deliberate and systematic violation of federal and state laws, including the FDCA and AKS, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government healthcare programs.

330.     The State of Tennessee, by and through the Tennessee Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

331.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Tennessee in connection with Defendants' conduct. Compliance with applicable Tennessee statutes and regulations was also an express condition of payment of claims submitted to the State of Tennessee.

332.     Had the State of Tennessee known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

333.    As a result of Defendants' violations of Tenn. Code Ann. § 71-5-182(a)(1), the State of Tennessee has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

334.    Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Tenn. Code Ann. § 71-5-183(a)(1), on behalf of herself and the State of Tennessee.

335.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damaged to the State of Tennessee, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF TENNESSEE and against Defendants:

(1)    Three times the amount of actual damages which the State of Tennessee has sustained as a result of Defendants' conduct;

(2)    A civil penalty up to the maximum permitted by law for each false claim which Defendants caused to be presented to the State of Tennessee;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)    The maximum amount allowed pursuant to Tenn. Code Ann. § 71-5- 183(c) and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XXVI – TEXAS FALSE CLAIMS ACT

336.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

337.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Texas to recover double damages and civil penalties under V.T.C.A. Hum. Res. Code § 36.001, *et seq*.

338.    V.T.C.A. Hum. Res. Code § 36.002 provides liability for any person who:

> (1) knowingly or intentionally makes or causes to be made a false statement or misrepresentation of a material fact:
>
> > (a) on an application for a contract, benefit, or payment under the Medicaid program; or
> >
> > (b) that is intended to be used to determine its eligibility for a benefit or payment under the Medicaid program;
>
> (2) knowingly or intentionally concealing or failing to disclose an event:
>
> > (a) that the person knows affects the initial or continued right to a benefit or payment under the Medicaid program of:
> >
> > > (i)    the person, or
> > >
> > > (ii)   another person on whose behalf the person has applied for a benefit or payment or is receiving a benefit or payment; and
> >
> > (b) to permit a person to receive a benefit or payment that is not authorized or that is greater than the payment or benefit that is authorized;

* * *

(4) knowingly or intentionally makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact concerning:

\* \* \*

(b) information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to the Medicaid program;

(5) knowingly or intentionally charges, solicits, accepts, or receives, in addition to an amount paid under the Medicaid program, a gift, money, a donation, or other consideration as a condition to the provision of a service or continued service to a Medicaid recipient if the cost of the service provided to the Medicaid recipient is paid for, in whole or in part, under the Medicaid program.

339.    Defendants violated V.T.C.A. Hum. Res. Code § 36.002 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Texas by its deliberate and systematic violation of federal and state laws, including the FDCA, federal AKS and § 36.002, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government healthcare programs.

340.    The State of Texas, by and through the Texas Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

341.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Texas in connection with Defendant's conduct. Compliance with applicable Texas statutes and regulations was also an express condition of payment of claims submitted to the State of Texas.

342. Had the State of Texas known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

343. As a result of Defendants' violations of V.T.C.A. Hum. Res. Code § 36.002, the State of Texas has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

344. Defendants did not, within 30 days after they first obtained information as to such violations, furnish such information to officials of the State of Texas responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State of Texas regarding the claims for reimbursement at issue.

345. Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to V.T.C.A. Hum. Res. Code § 36.101, on behalf of herself and the State of Texas.

346. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Texas, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF TEXAS and against Defendants:

(1) Two times the amount of actual damages which the State of Texas has sustained as a result of Defendants' conduct;

(2) A civil penalty of not less than $10,000 pursuant to V.T.C.A. Hum.

Res. Code § 36.025(a)(3) for each false claim which Defendants cause to be presented to the State of Texas;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)    The maximum amount allowed pursuant to V.T.C.A. Hum. Res. Code § 36.110, and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XXVII – VIRGINIA FRAUD AGAINST TAXPAYERS ACT

347.    Plaintiff-Relator reallege and incorporate by reference the prior paragraphs as though fully set forth herein.

348.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the Commonwealth of Virginia for treble damages and penalties under Virginia Fraud Against Tax Payers Act, §8.01-216.3a, which provides liability for any person who:

(1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval of a claim by the commonwealth;

(3) conspires to defraud the commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim; or

\* \* \*

(9) is a beneficiary of an inadvertent submission of a false claim to the commonwealth or political subdivision thereof, subsequently discovers the falsity of the claim, and fails to

disclose the false claim to the commonwealth or political subdivision within a reasonable time after discovery of the false claim.

349.    In addition, VA Code Ann. § 32.1-315 prohibits the solicitation, receipt or offering of any remuneration, including any bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for furnishing any good, service or item for which payment may be made, in whole or in part, under the Virginia Medicaid program.

350.    Defendants violated VA Code Ann. § 32.1-315 by engaging in the conduct alleged herein.

351.    Defendants furthermore violated Virginia's Fraud Against Tax Payers Act, § 8.01- 216.3a, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the Commonwealth of Virginia by its deliberate and systematic violation of federal and state laws, including the FDCA, federal AKS, VA Code Ann. § 32.1-315 and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government healthcare programs.

352.    The Commonwealth of Virginia, by and through the Virginia Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

353.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the Commonwealth of Virginia in connection with Defendants' conduct. Compliance with applicable Virginia statutes and regulations was also an express condition of payment of claims submitted to the Commonwealth of Virginia.

354.     Had the Commonwealth of Virginia known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

355.     As a result of Defendant's violations of Virginia's Fraud Against Tax Payers Act, §8.01-216.3a, the Commonwealth of Virginia has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

356.     Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Virginia's Fraud Against Tax Payers Act, §8.01-216.3, on behalf of herself and the Commonwealth of Virginia.

357.     This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the Commonwealth of Virginia, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the COMMONWEALTH OF VIRGINIA and against Defendants:

(1)     Three times the amount of actual damages which the Commonwealth of Virginia has sustained as a result of Defendants' conduct;

(2)     A civil penalty up to the maximum permitted by law for each false claim which Defendants caused to be presented to the Commonwealth of Virginia;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)     The maximum amount allowed pursuant to VA Code Ann. § 32.1-315 and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XXIX - WASHINGTON MEDICAID FRAUD ACT

358.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

359.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Washington to recover treble damages and civil penalties under the Washington Medicaid Fraud Act, RCWA 74.66.005, *et seq*.

360.    RCWA 74.66.020, in pertinent part, provides for liability for any person who:

a.    Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

b.    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; or

c.    Conspires to commit one or more of the violations in this subsection (1).

361.    In addition, RCWA 74.09.240 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for furnishing any item or service for which payment may be made, in whole or in part, under the Washington Medicaid program.

362.    Defendants violated RCWA 74.09.240 by engaging in the conduct described herein.

363. Defendants furthermore violated the Washington Medicaid Fraud Act, RCWA 74.66.005, *et seq.*, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Washington, by its deliberate and systematic violation of federal and state laws, including the FDCA, federal AKS, and RCWA 74.09.240, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government healthcare programs.

364. The State of Washington, by and through the Washington Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third-party payers in connection therewith.

365. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and, upon information and belief, also an express condition of payment of claims submitted to the State of Washington in connection with Defendants' conduct. Compliance with applicable Washington statutes and regulations was also an express condition of payment of claims submitted to the State of Washington.

366. Had the State of Washington known that Defendants was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct failed to meet the reimbursement criteria of the government healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third-party payers in connection with that conduct.

367. As a result of Defendants' violations of the Washington Medicaid Fraud Act, RCWA 74.66.005, *et seq.*, the State of Washington has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

368. Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Washington Medicaid Fraud Act, RCWA 74.66.005, *et seq.*, on behalf of herself and the State of Washington.

369. This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damages to the State of Washington, in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the STATE OF WASHINGTON and against Defendants:

(1)     Three times the amount of actual damages which the State of Washington has sustained as a result of Defendants' conduct;

(2)     A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Washington;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)     The maximum amount allowed pursuant to the Washington Medicaid Fraud Act, RCWA 74.66.005, *et seq.*, and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

Respectfully submitted,

**MENZ BONNER KOMAR & KOENIGSBERG LLP**

Dated: February 21, 2018

_____

DAVID A. KOENIGSBERG, ESQUIRE
One N. Lexington Ave., Suite 1550
White Plains, NY 10601
914.949.0222
dkoenigsberg@mbkklaw.com

**YOUMAN & CAPUTO, LLC**

BY:     DAVID J. CAPUTO, ESQUIRE*
3803 West Chester Pike, Suite 150
Newtown Square, PA 19073
(215) 302-1999
dcaputo@youmancaputo.com

**JOSEPH TRAUTWEIN & ASSOCIATES, LLC**

BY:     JOSEPH TRAUTWEIN, ESQUIRE*
17 Auchy Road
Erdenheim, Pennsylvania 19038
(215) 764-2301
jtrautwein@cpmiteam.com

*Attorneys for the Plaintiff-Relator*

*Not admitted in New York*